Filed 6/27/23  Sterling Pacific Lending v. Holman CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STERLING PACIFIC LENDING, INC., <br><br>        Plaintiff and Appellant, <br><br> v. <br><br> WAYNE HOLMAN <br><br>        Defendant and Respondent. | A165835 <br><br> (Monterey County <br> Super. Ct. No. M128502) |

Plaintiff Sterling Pacific Lending, Inc. (Sterling), a real estate lender and broker, made a loan to Aromas Heritage Oaks, LLC (the LLC), secured by a deed of trust in real property.  As part of that transaction, defendant Wayne Holman (Holman), the managing member of the LLC, executed a written guaranty of the loan.  Sterling thereafter assigned all but a small portion of the note evidencing the loan to outside investors.  When the LLC defaulted and a nonjudicial foreclosure failed to satisfy the outstanding note balance, Sterling filed this action against Holman to collect the deficiency under the guaranty.

In a prior appeal, the Sixth District Court of Appeal confirmed that Holman was a guarantor of the loan and remanded the matter for a

1

determination of Sterling's damages and any defenses asserted by Holman.[1] On remand, Holman persuaded the trial court that Sterling was entitled to recover only the deficiency associated with the portion of the note retained by Sterling, and the court found that Sterling was entitled to recover $9,477 on a deficiency exceeding $1 million. We conclude that Holman's obligation to Sterling under the guaranty required payment of the entire loan deficiency and remand for entry of judgment for the full amount.

## FACTUAL AND PROCEDURAL BACKGROUND

Holman and three other persons owned 80 acres of undeveloped land in Aromas, California (the property). At some point, the four formed the LLC and transferred the property to it. In February 2008, Sterling loaned $1.3 million to the LLC under a note secured by a deed of trust to the property.

As part of the transaction, each of the four members of the LLC, including Holman, executed a written "Payment Guaranty" (guaranty) of the note to Sterling. As the representations in the guaranties stated, Sterling was unwilling to make the loan based solely on the security offered by the LLC and required the execution of guaranties by its members as a condition of lending the money. The guaranties were expressly made "for the benefit of" Sterling and represented that "Guarantor has agreed to execute this Guaranty in order to guarantee to [Sterling] repayment of the Loan pursuant to the terms of the Note and each guarantor acknowledges that he or she is undertaking an independent obligation separate from that of [the LLC] to repay the Loan." Under the terms of the guaranties, each LLC member "unconditionally guarantees and promises to pay to [Sterling] or order, on

---

[1] The appeal in this matter was originally filed in the Sixth District. The case was transferred to this court by order of former Chief Justice Cantil-Sakauye under California Rules of Court, rule 10.1000(a)(1)(C).

2

demand . . . all amounts due under the Note . . . .  Guarantor's obligations under this guaranty are irrevocable so long as any portion of the Loan remains unpaid."

Soon after Sterling funded the loan, it sold interests in the note to several investors (investors).  In return for their investment, the investors were assigned a share of the note principal and interest and a partial interest in the deed of trust securing the note.[2]  Sterling also executed "Loan Servicing Agreements" with each of the investors, which, among other things, required Sterling to collect and distribute interest payments and to initiate and direct foreclosure on the deed of trust in the event of borrower default.

Although the precise terms of the partial assignments to the investors are not clear from the appellate record, it is uncontradicted that the assignments did not convey any rights under the guaranties.  A Sterling principal explained that "[a]s the servicer [of the loan], the guarantee is issued to Sterling as part of the collateral pool . . . [,] but the servicer has to be the one litigating it as necessary."

Within two years after execution of the note, the loan fell into default, and Sterling conducted a nonjudicial foreclosure sale of the property.  When the foreclosure sale left a deficiency under the note of close to $1 million, Sterling brought this action under the guaranties to recover the deficiency from the LLC members.  As the cause of action for breach of contract alleges,

_____

[2] The primary evidence of these assignments in the appellate record appears to be the oral testimony of a Sterling principal at trial.  Copies of the assignments of partial interests in the deed of trust to each investor are found in the record, but neither party has cited to copies of the remaining assignment documents, particularly including the assignments of interests in the note.  We therefore have no evidence of the exact terms of those assignments.

3

"Defendants [i.e., the four guarantors] breached their Payment Guarantees when they failed to make payments after [the LLC] defaulted under the Note and to pay the deficiency which resulted from the Trustee's Sale on or around September, 2014."  Three of the guarantors settled with Sterling, and the action went to trial against Holman alone.

The primary issue at trial was the interpretation of the loan documents.  Holman contended that the foreclosure sale had extinguished his debt because he was a coborrower under those documents, not a guarantor.  The trial court agreed and entered judgment for Holman.

The Sixth District Court of Appeal reversed the judgment.  The appellate court  held that the LLC was the borrower on the note, while the four individuals were guarantors of the note in their personal capacities. (*Sterling Pacific Lending, Inc. v. Holman* (June 24, 2019, H044662) [nonpub. opn.], at pp. 10, 16, 19 (*Sterling Pacific I*).)  The court remanded the matter "to the trial court to determine, . . . any remaining issues, including Holman's defenses and whether Sterling incurred damages and, if so, the amount."  (*Id.* at p. 20.)

On remand, Holman filed a motion in limine seeking to preclude the introduction of further evidence at the continued proceeding, arguing that the Court of Appeal's disposition "did not authorize the reopening of trial for new evidence or witnesses."  The court granted the motion over Sterling's opposition, ruling that "[n]o further evidence or witnesses shall be allowed at the continued trial."

Following entry of the court's order precluding further evidence, Holman filed a pre-trial brief, arguing for the first time that Sterling had standing to recover only the outstanding loan deficiency attributable to Sterling's residual share of the note.  Because Sterling had assigned interests

in 99.2 percent of the note, the argument left Sterling a potential recovery of .8 percent of the deficiency. Further, Holman argued that any authority Sterling might have had to bring an action on behalf of the investors had terminated because the loan servicing agreements expired by their terms upon the trustee's sale of the property. Holman excused his failure to raise this issue at the original trial by arguing that "[t]he issue of standing can be raised at any time."

In response, Sterling argued that Holman had forfeited the issue of standing by failing to assert it as an affirmative defense. In the event the court entertained the argument, however, Sterling sought to introduce (and proffered) copies of new servicing agreements executed by each of its investors granting Sterling the authority, as the investors' agent, to take necessary actions to collect on the deficiency.

The trial court denied Sterling's request to introduce the loan servicing agreements and held that Sterling was entitled to recover only .8 percent of the outstanding loan deficiency. As the court explained, "Sterling clearly had standing to the extent of .008 to bring this action, but as a matter of damages sustained by Sterling, I think the most that it could recover was the .008 factor because that's all it retained after having transferred fractionalized interest[s] to other investors."[3] Neither party requested a statement of decision, and the court entered judgment in Holman's favor. Although the court concluded Sterling was entitled to recover a small share of the

---

[3] We note that the reporter's transcript of the hearing impliedly attributes this statement to Sterling's counsel (who made the statement in the paragraph that preceded this one), but the content and context of the statement make clear that it must have been a statement by the court, not counsel.

5

deficiency, it offset against this share the entirety of the amounts received in settlement from the other guarantors, rather than a pro rata share. The settlements far exceeded Sterling's share of the deficiency. Accordingly, although Holman had guaranteed a loan deficiency that undisputedly exceeded $1 million, the trial court's judgment not only denied Sterling any recovery under the guaranty, but it also awarded $267,000 in attorney's fees against Sterling.

## DISCUSSION

Sterling contends that the trial court erred (1) in failing to allow Sterling to recover the entirety of the loan deficiency under Holman's guaranty, (2) in allowing Holman to assert, for the first time on remand, the argument that Sterling was limited in its recovery to the deficiency associated with its percentage interest in the now extinguished note, while denying Sterling the opportunity to introduce evidence on the issue, and (3) in offsetting against the amount awarded to Sterling the full amount of the settlements from the other three LLC members. We find it necessary to address only the first issue, which requires reversal of the judgment.

"Absent a statement of decision, the reviewing court presumes that the trial court made all factual findings necessary to support the judgment and reviews those implied findings under the substantial evidence rule." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 293; see *LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP* (2016) 3 Cal.App.5th 1067, 1076 ["The lack of a statement of decision affects the tenor of appellate review. When a statement of decision is not issued, the appellate court applies the doctrine of implied findings"].) Where, however, the evidence is largely undisputed, as here, "[t]he impact of the doctrine of implied findings . . . is somewhat mitigated. . . . We review legal conclusions arising from an

6

established set of facts independently. [Citations.] Likewise, unless interpretation of a written document 'depends on the credibility of conflicting extrinsic evidence, the interpretation of a writing involves a question of law for de novo review by the appellate court.' " (*Clover Property*, at p. 1076.)

The trial court's ruling that Sterling was entitled to recover only the portion of the deficiency attributable to Sterling's percentage interest in the now extinguished note suggests that the trial court believed either that this action was brought to recover under the note itself or that Sterling's assignment of interests in the note also conveyed interests in the guaranties. Neither was the case.

There is no dispute that, under California's antideficiency statutes, the sale in nonjudicial foreclosure of the property securing the note extinguished any further obligations of the LLC under the note. (*Black Sky Capital, LLC v. Cobb* (2019) 7 Cal.5th 156, 160 ["under [Code of Civil Procedure] section 580d, 'the creditor may not seek a deficiency judgment' after a nonjudicial foreclosure"].) The law is clear, however, that a loan guaranty creates an obligation *independent* of the debt secured that is not affected by the antideficiency statutes. "A guarantor is one who promises to answer for the debt or perform the obligation of another when the person ultimately liable fails to pay or perform. [Citation.] 'A contract of guaranty gives rise to a separate and independent obligation from that which binds the principal debtor.' [Citation.] 'Since [Code of Civil Procedure] section 580a has to do solely with actions for recovery of deficiency judgments on the principal obligation [it] has no application to an action against a guarantor.' "[4] (*Talbott v. Hustwit* (2008) 164 Cal.App.4th 148, 151.)

_____

[4] Code of Civil Procedure section 580a applies to judicial foreclosures, but there is no reason to reach a different conclusion under section 580d,

Because the foreclosure extinguished any further obligations of the LLC under the note, neither Sterling nor any of his investors have any right to recover under the note. Sterling's only remedy to recover the unpaid balance arises under Holman's guaranty. Further, Holman's obligation to pay any deficiency under the note arises solely by virtue of his execution of the guaranty; the obligation did not arise under the note and was not extinguished by the nonjudicial foreclosure. Accordingly, as alleged in Sterling's complaint, this action was necessarily brought under the guaranties, not the note.

Given the discharge through foreclosure of any further obligations under the note, the trial court's ruling that Sterling was entitled to recover only a portion of the deficiency must be justified by reference to Holman's guaranty, not the note. Further, given (1) Sterling's status as the sole counter-party on Holman's guaranty, (2) the recitation in the guaranty that it was executed in favor of Sterling, and (3) the unconditional remedy in the guaranty of "all amounts due under the Note," the award to Sterling of only a portion of the loan deficiency can be affirmed only if Sterling can be found to have transferred to another party or parties, presumably to the investors, most of its interest in Holman's guaranty or if, as Holman also argues, the guaranty was "discharged" to the extent of the assignments. We find no support for either conclusion.

There is no evidence that Sterling took any action to transfer a portion of the guaranty to the investors, whether by assignment or otherwise. As

_____

applicable to nonjudicial foreclosures. (See *Auerbach v. Great Western* Bank (1999) 74 Cal.App.4th 1172, 1188 ["per section 580d of the Code of Civil Procedure, the bank could not obtain a deficiency from the borrower, but could from a guarantor"].)

noted above, the record does not appear to contain any copies of Sterling's written assignments of interests in the note to the investors. These documents therefore cannot provide evidence of a partial assignment of interests in the guaranty. Further, and to the contrary, Sterling's principal testified at the part of the trial that preceded the Sixth District's opinion in *Sterling Pacific I* that Sterling intentionally retained full rights in the guaranties in order to carry out its duty to service the loan. That evidence is uncontradicted in the record. As a result, there is no evidence of a voluntary transfer of interests in the guaranty by Sterling.

Holman does not contend otherwise. Rather, he argues that Sterling's assignments of interests in the note transferred interests in the guaranty to the investors *by operation of law*, contending that "the Guaranty, as a security instrument for the portions of the Note assigned, [was] transferred to the other Noteholders without the necessity of assignment when the Note was assigned."

As support, he first cites, without analysis, *Ellison v. Henion* (1920) 183 Cal. 171 (*Ellison*).) We find *Ellison* inapplicable here. *Ellison* was a suit to recover under a shareholder's guaranty of any debts of the corporation to the plaintiffs. (*Id*. at p. 172.) When the corporation subsequently became "embarrassed financially," it executed two notes in favor of a representative of its creditors, which notes "represented the aggregate of the debts due the creditors, including the debt to the plaintiffs." (*Ibid*.) Eventually the corporation defaulted on these notes, and a different shareholder purchased them. In return, the creditor's representative endorsed the notes to the shareholder. (*Id*. at p. 173.) The plaintiffs' action was filed to recover the corporate debts remaining after distribution to the plaintiffs of the proceeds from the shareholder's purchase of the notes. (*Ibid*.)

9

The court agreed with the defendant that endorsement of the notes carried with it the underlying debts; following the endorsement, therefore, the corporation's debts to the plaintiffs were owed to the endorsee shareholder, not to the plaintiffs. "In other words," the court held, "when the plaintiffs brought this action they were not the owners of or interested in the obligation whose guaranty they seek to enforce." (*Ellison*, *supra*, 183 Cal. at p. 175.) To hold that the corporation remained indebted to the plaintiffs, the court held, "would be to subject it to a double liability for the same obligation." (*Ibid.*)

Even if the debts had been transferred to the endorsee, the plaintiffs argued, they were still entitled to collect under the guaranty because "the obligation of the guarantor is an independent obligation . . . and therefore not transferred by a transfer of the obligation guaranteed." The court rejected that argument, relying on an Oregon decision holding that the assignment of a husband's note transfers the statutory liability of his wife on the note to the assignee. An equivalent transfer of the guaranty obligation to the endorsee of the *Ellison* notes, the court held, "seems to us almost self-evident." (*Ellison*, *supra*, 183 Cal. at p. 176.)

*Ellison* does not dictate a finding that Holman's guaranty was assigned as a matter of law to the investors. First, unlike the plaintiffs in *Ellison*, whose debts had been transferred to the endorsee, Sterling retained an interest in the note, albeit only a partial interest. More importantly, a deemed transfer of Holman's guaranty is not necessary to avoid the risk of imposing a double liability for the same obligation. By the time this action was filed, the LLC's obligations under the note had been extinguished by the foreclosure. There was no risk that, after Sterling recovered under the guaranty, the investors would seek to recover the same deficiency

10

themselves. They were not parties to the guaranties; their rights to recover under the note had been extinguished; and, in any event, Holman had no obligations under the note for which they could recover. The only party with legal standing to recover the deficiency was Sterling, by virtue of the guaranties. For this reason, there is no reason to hold that the guaranties were transferred by operation of law to the investors. Unlike the endorsee in *Ellison*, Sterling's investors no longer had an enforceable interest in the debts guaranteed.

Holman also relies on *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485 (*Niederer*) for his claim that the guaranty was partially assigned by operation of law, but that decision cuts against his position. The plaintiff in *Niederer* was the primary shareholder of a corporation that sold its assets to another corporation. As part of the sale, the purchasing corporation gave a note to the selling corporation; the note "included a guaranty signed by defendant." (*Id*. at p. 1492.) After the transaction was completed, the plaintiff dissolved the selling corporation and assigned the note to herself. She subsequently brought an action against the defendant under his guaranty to recover the balance due under the note. (*Ibid*.)

Among other contentions, the defendant argued that his guaranty did not extend to plaintiff, who was not the payee of the note. (*Niederer*, *supra*, 189 Cal.App.3d at p. 1501.) In a preface to its discussion, the court summarized the applicable law as follows: "A guaranty is either general or special. A special guaranty names a definite person as its obligee, and it may be enforced only by that person. [Citations.] Unless otherwise specified, such a guaranty is not transferable. [Citation.] A general guaranty, on the other hand, does not name a specific obligee; it passes with the transfer of the note, the payment of which it guarantees, whether or not the guaranty is

11

specifically mentioned in the transfer.  [Citation.]  Either type of guaranty may be enforced by one who is a party to it or interested in it by transfer, assignment, or other means." (*Ibid*.)  Because the *Niederer* plaintiff was both an assignee of the note and identified in the note as the obligee of the defendant's guaranty, the court held, she was entitled to enforce the guaranty, regardless of whether it was special or general.  (*Id*. at pp. 1501– 1502.)

Holman's guaranty was a special guaranty.  It identified a definite person, Sterling, as the obligee.  Under the law as stated in *Niederer*, not only was Sterling entitled to enforce the guaranty, but Sterling was also the *only* party entitled to enforce it.[5]

Holman appears to acknowledge that the guaranty was a special guaranty, but he argues that the assignment of the debt underlying a special guaranty discharges the guaranty, citing *Reios v. Mardis* (1912) 18 Cal.App. 276 (*Reios*), and *Murphy v. Luthy Battery Co.* (1925) 74 Cal.App. 68.  Neither case supports his position.  The guaranty in *Reios* was held to be a general guaranty that could be assigned.  (*Reios*, *supra*, 18 Cal.App. at p. 280.)  The guaranty in *Murphy*, although given to two specific persons, was nonetheless held to be assignable on the theory that, because it guaranteed payment of the entire five-year term of a lease, "it may be fairly inferred . . . that it was intended that the guaranty should inure to the benefit of the assignees of the original lessors, in the event that lease was assigned at any time during the

_____

[5] Although the guaranty specified Sterling as the obligee, it also granted Sterling the power to assign.  Presumably, under *Niederer*, Sterling or its assignee, if any, had the exclusive right to enforce the guaranty.  For our purposes, the important point is that *Niederer* does not suggest that the guaranty could be assigned by operation of law.

life thereof." (*Murphy, supra,* 74 Cal.App. at pp. 69, 74.) Accordingly, neither *Reios* nor *Murphy* holds that assignment of the debt underlying a special guaranty discharges the guaranty.[6]

Nor do we find merit in Holman's rationale for arguing that the guaranty was discharged to the extent of the assigned interests in the note. Holman contends that discharge "makes sense" because the guaranty "was not a separate monetary obligation" because it secured payment of the note. As discussed above, however, the case law is *uniformly* to the contrary in declaring a guaranty a separate and independent obligation from the guaranteed debt. Holman's note expressly declared as much, stating that the guaranty created "an independent obligation separate from that of [the LLC] to repay the Loan."

The trial court concluded that Sterling was entitled to recover only .8 oercent of the deficiency because, as it explained, "that's all it retained." In so ruling, the trial court was necessarily equating the note, which was partially assigned, and the guaranty. As discussed above, however, a .8 percent interest is not "all [Sterling] retained" under the guaranty; Sterling retained 100 percent of the rights under the guaranty, as a matter of both fact and law. As such, Sterling was entitled to the remedy specified by the guaranty, which is recovery of the entirety of the deficiency. Further, the trial court's ruling appears to have been premised on the assumption that, as

---

[6] The *Reios* court did opine that "[i]f the contract of guaranty in the case at bar had been specifically limited to the lessor named in the lease, there would have been much force in the contention that the obligation of the guarantor was purely personal, and that its assignment, before default of the lessee, operated as a discharge of the obligation." (*Reios, supra,* 18 Cal.App. at p. 280.) As is evident, however, the statement is simple dictum, and it is not supported by any citation to authority.

a result of the assignments, Sterling's actual financial loss was limited to .8 percent of the deficiency and that Sterling could recover as damages no more than its financial loss. Such a premise, however, is based on speculation. There is only limited evidence in the record about Sterling's relationship with the investors. It is not known whether Sterling guaranteed recovery to the investors or for some other reason will suffer the loss of the entire deficiency in the absence of Holman's payment. The record is uncontradicted, however, that Sterling has shared the settlements in this action pro rata among the investors, from which it can be inferred that Sterling considers itself under a further legal obligation to the investors.

If an assignment of partial interests in the guaranty was necessary to protect Holman from the risk of multiple judgments, as in *Ellison*, *supra*, 183 Cal. 171, we would not hesitate to find such an assignment. As noted above, however, the record shows no such risk. Enforcement of the guaranty by Sterling alone, rather than by the entire pool of investors, does not expose Holman to later suit by the investors, who have no further rights under the note and were not parties to the guaranty. If Sterling fails to satisfy its duty to the investors to distribute to them their share of the judgment in this action, their remedy, if any, lies against Sterling, not Holman. In short, finding partial assignments of the guaranty here would serve no legal purpose.

Holman has had an opportunity in two separate trials to assert any defenses he might have to enforcement of the guaranty. For the reasons stated in this decision and by the Sixth District in *Sterling Pacific I*, none of the arguments he has advanced provides a meritorious basis for excusing his liability under the guaranty. We therefore will order that judgment be

14

entered against Holman for the full deficiency under the note, taking into account any sums received in settlement from the other guarantors.

## DISPOSITION

The judgment is reversed. The trial court is directed, on remand, to vacate its judgment and to enter a new judgment awarding damages to Sterling in the amount of the unpaid balance of the note at the time of entry of the new judgment, with due allowance for any sums received in settlement, as well as any costs or attorney's fees to which Sterling might be entitled. Sterling is awarded its costs on appeal.

 

 

 

_____
Miller, J.

WE CONCUR:

_____
Stewart, P.J.

_____
Richman, J.

A165835, *Sterling Pacific Lending, Inc. v. Holman*

16